# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DARRELL SONGER, individually and on behalf of all others similarly situated** § § § **Plaintiff,** § § vs. § § **ADVANCED BUILDING SERVICES, LLC.** § § § § **Defendant.** § | **Docket No. 4:14-cv-03154** **JURY TRIAL DEMANDED** **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

**DECLARATION OF DARRELL SONGER**

I, Darrell Songer, declare under the penalty of perjury that the following is true and correct pursuant to 28 U.S.C. § 1746:

1. I worked for Advanced Building Services, LLC ("ABS") as a Service Technician. ABS paid me and all other Service Technicians a salary and set rate each day I worked in the field. Regardless of the number of hours I worked or the duties I performed, I never received overtime pay. I believe that the job duties I performed entitle me to receive overtime pay; therefore, I joined this lawsuit to recover back wages for all hours worked in excess of forty hours a week, liquidated damages, attorney fees, and costs.

2. ABS is an oilfield service company that provides a number of services to the oil and gas industry. Additionally, ABS offers "Turnkey Solutions" where it delivers mobile command units, living quarters, and workstations to the well site.

3. The mobile accommodations are work ready as soon as they are deployed in the field. As a Service Technician, I assisted ABS with the preparation, rig up, maintenance, and rig down of these mobile accommodations.

4. I did most of my work for ABS in the field and the shop. Largely, I performed technical and manual labor in the form of housekeeping and maintenance duties.

5. On a daily basis, I would report to work at the ABS facility and perform routine tasks around the shop. ABS required me to take inventory, launder linens, and clean the shop and mobile accommodations. I used Windex, Ajax, 409, and Clorox on a regular basis. I also conducted maintenance on the mobile accommodations. Drills, screwdrivers,

hammers, and pipe wrenches, were tools I often used to complete the tasks assigned to me.

6. Occasionally, ABS would send me on service calls where I would ride with a crew into the field to work on a mobile accommodation. As at the shop, ABS expected that I be able to perform basic maintenance, plumbing, and electrical services. I unstopped toilets, replaced light bulbs, and fixed broken parts.

7. The last part of my job included rigging up and down the mobile accommodations. ABS would send a crew of Service Technicians to a well pad to prepare the mobile accommodations for its future occupants. The other Service Technicians and I would connect the sewer systems, set up satellite/internet, roll out the power cords, put sheets and pillows on the beds, untape the moveable or breakable pieces such as the toilet tank lid, and generally make the accommodations livable.

8. When the accommodations were no longer needed, the crew of Service Technicians would go to the job site and disassemble the units. We would duct tape down moveable items such as the toaster, prepare the sewage and water tanks for drainage, secure the table and chairs, remove pillows and sheets, and perform basic cleaning duties.

9. All of these duties were highly regulated and performed in strict compliance with ABS policies and procedures. Service Technicians were not allow to vary from the ABS way of cleaning, rigging up, performing maintenance, or rigging down.

10. Depending on the number of mobile accommodations deployed, I would work with a crew of three to eight Service Technicians.

11. Based on talks with my co-workers, we all performed the same job duties and worked similar schedules.

12. Regularly, we worked well in excess of forty hours in a single week without ever receiving overtime pay.

13. Many of my former co-workers have expressed interest in this case. I believe that if my co-workers at ABS were notified of this lawsuit and their right to challenge ABS' pay practices that many of them would participate.

14. We work in remote locations and work schedules that make it difficult for us to regularly receive mail. Therefore, I believe that in addition to receiving a letter notice, sending an email notice and posting a notice at the yard will guarantee that Service Technicians receive notice of this lawsuit.

Date: May 21, 2015         Signature: *Darrell J Songer*
                                     Darrell J Songer (May 21, 2015)